UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DEWEY LEE HOLLINGSHEAD,<br><br>                    Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of the Social Security<br>Administration,<br><br>                    Defendant. | CASE NO. 14-cv-05334 JRC<br><br>ORDER ON PLAINTIFFS<br>COMPLAINT |

        This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United

States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos.

13, 14, 15).

        After considering and reviewing the record, the Court concludes that the ALJ

erred when evaluating whether or not plaintiffs Multiple Sclerosis satisfies Listing

section 11.09 and erred when evaluating the medical evidence provided by plaintiff's

treating neurologist. Nevertheless, issues remain that only the ALJ can resolve.

Therefore, this matter is reversed and remanded pursuant to sentence four of 42

U.S.C. § 405(g) for further proceedings consistent with this Order.

## BACKGROUND

Plaintiff, DEWEY HOLLINGSHEAD, was born in 1979 and was 31 years old on

the alleged date of disability onset of January 6, 2011 (*see* Tr. 139-42). Plaintiff has a

tenth grade education and has not obtained his GED (Tr. 37).  Plaintiff has worked in a

warehouse stacking pallets; had a job building fences; has cashiered and stocked shelves;

has delivered appliances and has done maintenance in an apartment complex. He works

seasonally for a fair, where he is able to take breaks (Tr. 40-41).

According to the ALJ, plaintiff has at least the severe impairments of "multiple

sclerosis (M.S.); major depressive disorder; amphetamine dependence in remission;

psychological factors (anxiety) affecting a medical condition (seizures); restless leg

syndrome; and seizure disorder (20 CFR 404.1520(c) and 416.920(c))" (Tr. 14).

At the time of the hearing, plaintiff was living with his girlfriend (Tr. 39).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C.

§ 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. §

1382(a) (Title XVI) of the Social Security Act were denied initially and following

reconsideration (*see* Tr. 68-79, 81-94). Plaintiff's requested hearing was held before

Administrative Law Judge David Johnson ("the ALJ") on November 9, 2012 (*see* Tr. 30-

66). On November 30, 2012, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 9-29).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Did the ALJ err by failing to find that plaintiff's Multiple Sclerosis satisfies Listing section 11.09 or to address medical equivalency for that listing section; (2) Did the ALJ err by improperly rejecting opinions from the treating M.S. specialist and adopting opinions from the non-examining physician who did not review the entire record; (3) Did the ALJ provide "clear and convincing" reasons to reject plaintiff's testimony; (4) Did the ALJ provide specific and valid reasons to reject lay witness evidence; and (5) Did the ALJ consider all of the evidence when assessing the RFC and are the step 5 findings based on that RFC supported by law and fact (*see* ECF No. 13, p. 1). Because the Court concludes that issues number (1) and (2) are dispositive, the remainder of the issues raised will not be discussed herein.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

> **(1)   Did the ALJ err by failing to find that plaintiff's Multiple Sclerosis satisfies Listing section 11.09 or address medical equivalency for that listing section?**

Plaintiff argues that the ALJ erred in not finding that he met Listing 11.09A[1], and provides a list of the evidence in the record that supports his argument (*see* Opening Brief, ECF No. 13, pp. 13-14). Defendant summarizes the standard; acknowledges plaintiffs argument and replies that "Plaintiff's argument is misplaced because he has not specifically satisfied his burden of showing that even with the evidence in the record he cites to that he meets each one of the requirements of Listing 11.09(A), which refers to listing 11.09B[2] (which then refers to 11.00C[3]) for the duration requirement of 12 months'

---

[1] Listing 11.09. Multiple sclerosis. With:
A. Disorganization of motor function as described in 11.04B; or  . . . .

20 C.F.R. pt. 404, subpt. P, app. 1, 11.09.

[2] Listing 11.04. Central nervous system vascular accident. With one of the following more than three months post vascular accident:  . . . .  B. significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movement, or gait and station (see 11.00C).

20 C.F.R. pt. 404, subpt. P, app. 1, 11.04.

[3] Listing 11.00C. Neurological.

C. Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brainstem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provide sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. pt. 404, subpt. P, app. 1, 11.00C.

(*see* Response, ECF No. 14, p. 5). This is the entirety of defendant's response to plaintiff's argument regarding if plaintiff met the listing (*see id.*, pp. 5-6). Defendant has not indicated which one of the requirements plaintiff has not established, or if defendant's response rests on a lack of demonstrated duration by plaintiff (*see id.*). This basically equates to no substantive argument at all and is completely unhelpful to the Court.

At step-three of the administrative process, if the administration finds that the claimant has an impairment(s) that has lasted or can be expected to last for not less than twelve months and is included in Appendix 1 of the Listings of Impairments, or is equal to a listed impairment, the claimant will be considered disabled without considering age, education and work experience.  20 C.F.R. § 404.1520(d).   The claimant bears the burden of proof regarding whether or not she "has an impairment that meets or equals the criteria of an impairment listed" in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings"). *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005), *as modified to render a published opinion by* 2005 U.S. App. LEXIS 3756 (9th Cir. 2005).

As the evidence cited by plaintiff encompasses a time period from February 10, 2011 to October 31, 2012, plaintiff evidences duration of some difficulties persisting for at least the duration of twelve months. However, the Court notes that the relevant listing refers to section 11.04 and to 11.00C, which provides, in relevant part, that the "assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms." 20 C.F.R. pt. 404, subpt. P, app. 1, 11.00C, *see supra*, fn.3. Although plaintiff demonstrated balance difficulties on September 6, 2011, as well as inability to perform tandem gait or walk on his heels or

toes (Tr. 374-75), and on December 30, 2011 demonstrated "Sensory examination 20% of normal sensation in the feet" with diminished tandem walk (Tr. 426), it is unclear from the medical record when the degree of interference with locomotion was sufficiently established; or at what point in time the disturbance of gait was sustained. What is clear is that the question of whether or not plaintiff met or medically equaled this Listing requires further evaluation by the ALJ, perhaps with the assistance of a medical expert.

Regarding the issue of equivalence, the Court notes that in his opening statement at plaintiff's administrative hearing, plaintiff's attorney pointed out to the ALJ that:

> [Plaintiff's] doctor at the Multicare Neuroscience Center has submitted a medical source statement at 12–F, this is Dr. Huddlestone, stating that the claimant is incapable of sustaining even part-time employment on a full-time  -- or on a regular sustained basis because of his impairments; so I'd urge you to find that the record does support a finding of disability based on a combination of all his impairments.

(Tr. 34-35).

Plaintiff submitted multiple medical records with findings and test results supporting the doctor's opinion and supporting the argument that plaintiff's impairments met Listing 11.09A or that plaintiff's limitations resulting from his impairments medically equaled Listing 11.09A. The only discussion by the ALJ regarding Listing 11.09 includes the following: "Regarding the claimants, (sic) multiple sclerosis, the evidence does not establish the requisite severity of disorganization of motor function, visual or mental impairment, or fatigue required under Listing 11.09" (Tr. 15). This "discussion" by the ALJ is insufficient. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (where claimant offered evidence in an effort to establish equivalence and the ALJ included only one

conclusory statement regarding that "claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings  . . . .  or the duration requirements of the Act  . . . ." such a finding "is insufficient to show that the ALJ actually considered equivalence"). Here, the ALJ not only made a conclusory finding that the evidence did not establish the requirements pursuant to Listing 11.09, but also, the ALJ made no indication at all that he considered the issue of equivalence. As held by the Ninth Circuit, when determining if "a claimant equals a listing under step three of the Secretary's disability evaluation process the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *See id.* Here, the ALJ provided no explanation and does not appear to have evaluated the combined effects of plaintiff's impairments when evaluating Listing 11.09, but instead refers only to plaintiff's multiple sclerosis ("MS") (*see* Tr. 15). As found by the ALJ, in addition to MS, plaintiff also suffered from the severe impairments of "major depressive disorder; amphetamine dependence in remission; psychological factors (anxiety) affecting a medical condition (seizures); restless leg syndrome; and seizure disorder" (*see* Tr. 14). Considering the facts of this case and the medical record as a whole, the Court concludes that the ALJ's "explanation" is insufficient. *See Marcia*, *supra*, 900 F.2d at 176.

Also, the Court notes plaintiff's argument the ALJ failed to obtain an updated medical opinion about medical equivalency when the non-examining State agency physician did not have the benefit of significant medical evidence after 2011, including the evidence provided by the MS specialist (*see* ECF No. 13, p. 15 (*citing* SSR 96-6p; 20

C.F.R.  404.1526(c); *Rogers v. Colvin*, No. 13cv5627 at ECF No. 27-8 (W.D. Wash. 2014) (unpublished opinion))).

Based on the record as a whole, the Court concludes that this matter must be reversed and remanded for further administrative proceedings. Following remand, the issues of both meeting Listing 11.09A, as well as medically equivalence to Listing 11.09A, should be evaluated anew by the ALJ.

> (2)   **Did the ALJ err by improperly rejecting opinions from the treating M.S. specialist and adopting opinions from the non-examining physician who did not review the entire record?**

Plaintiff contends that the ALJ erred by rejecting the opinions of plaintiff's treating MS specialist and instead adopting opinions of a non-examining state agency physician who did not review the complete record and did not review all of the evidence from the MS specialist. Defendant acknowledges that the opinion of a treating source "merits great deference" (*see* ECF No. 14, p. 8 (*citing Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013); *Tibble v. Edison Int'l*, 729 F.3d 1110, 1133 (9th Cir. 2013))).

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). When a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are

supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31

(9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v.*

*Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out

a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th

Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In general, more weight is given to a treating medical source's opinion than to the

opinions of those who do not treat the claimant.  *Lester, supra*, 81 F.3d at 830 (*citing*

*Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). According to the Ninth Circuit,

"[b]ecause treating physicians are employed to cure and thus have a greater opportunity to

know and observe the patient as an individual, their opinions are given greater weight

than the opinion of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

1996) (*citing Rodriguez v. Bowen*, 876 F.2d 759, 761-762 (9th Cir. 1989); *Sprague v.*

*Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). In addition, an examining physician's

opinion is "entitled to greater weight than the opinion of a non-examining physician."

*Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. §

404.1527(c)(1)("Generally, we give more weight to the opinion of a source who has

examined you than to the opinion of a source who has not examined you").

Defendant contends that plaintiff's arguments regarding the medical opinions are

misplaced because the ALJ's finding that Dr. John R. Huddlestone, M.D.'s last visit with

plaintiff occurred on July 30, 2012 is supported by the response in the negative of

plaintiff's attorney at the hearing when the ALJ asked if any evidence had been withheld

or omitted or not submitted (*see id.* (*citing* Tr. 33)). The Court does not find persuasive

defendant's argument that the answer from plaintiff's attorney to the ALJ's general question

that no evidence was withheld or not submitted relieved the ALJ of his duty to develop

the record. The Court also notes that the ALJ did not rely on this introductory remark

when failing to credit fully Dr. Huddlestone's opinion and according to the Ninth Circuit,

'[l]ong-standing principles of administrative law require us to review the ALJ's decision

based on the reasoning and actual findings offered by the ALJ - - not *post hoc*

rationalizations that attempt to intuit what the adjudicator may have been thinking.' *Bray*

*v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*,

332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d

1104, 1121 (9th Cir. 2012) ('we may not uphold an agency's decision on a ground not

actually relied on by the agency') (*citing Chenery Corp, supra*, 332 U.S. at 196).

     Dr. Huddlestone was a treating physician of plaintiff, and furthermore was a

specialist in MS. The ALJ rejected opinions from Dr. Huddlestone, and instead relied on

the opinions of a non-examining physician who did not review all of the record, and did

not even review all of the opinions from plaintiff's treating MS specialist, Dr.

Huddlestone. Although the ALJ also indicated some reliance on the opinion of Dr.

Surinder Singh, M.D. when determining the RFC, the ALJ did not adopt the limitation

opined by Dr. Singh regarding standing for only two hours in an eight hour workday (*see*

Tr. 16, 21).

     On October 31, 2012, Dr. Huddlestone opined that plaintiff had "an expanded

disability status scale of approximately 5 at this time" (Tr. 428). He noted that plaintiff's

deficits "include significant fatigue, lower extremity weakness, and hyperthesia, and

diminished ability to walk" (*id.*). Dr. Huddlestone also indicated his opinion that because

of plaintiff's "neurologic deficits attributable to MS he is not able to work even part-time

on a permanent job" (*see id.*).

The ALJ, in his written opinion, indicated that plaintiff's "last visit with Dr.

Huddlestone [was] on July 30, 2012" (Tr. 20). This finding is contradicted by the letter

from Dr. Huddlestone on October 31, 2012, in which he indicated his contemporaneous

opinion that "at this time" plaintiff suffered from an expanded disability status scale of

approximately five (*see* Tr. 428). Plaintiff's treatment records from Dr. Huddlestone were

printed on October 2, 2012 (*see* Tr. 410). It also is clear from the record that Dr.

Huddlestone, subsequent to this date, provided an updated opinion in which he changed

his assessment of plaintiff's disability status scale rating (*see* Tr. 428).

It is not a logical inference from the record that Dr. Huddlestone would alter his

opinion regarding plaintiff's expanded disability status scale rating without examining

plaintiff. Although an ALJ may "draw inferences logically flowing from the evidence,"

*Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir.

1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)), an ALJ may not speculate.

*See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

Here, when failing to credit fully the opinions from Dr. Huddlestone, the ALJ

relied on a finding that Dr. Huddlestone's "last visit with the claimant [was] on July 30,

2012" (Tr. 22). However, this finding is not based on substantial evidence in the record,

but more closely resembles speculation. Therefore, the Court concludes that the ALJ's finding that Dr. Huddlestone last examined plaintiff on July 30, 2012 is a finding not supported by substantial evidence in the record as a whole.

The Court also notes that the ALJ's reference to Dr. Huddlestone's opinion with respect to the ultimate conclusion regarding disability does not mean that all of his opinions can be disregarded. Although it is the ALJ's responsibility to make the ultimate determination regarding disability, this opinion from Dr. Huddlestone nevertheless reflects his opinion regarding the severity of plaintiff's limitations and should be assessed. Regarding the ALJ's indication that the deficits opined by Dr. Huddlestone were "accommodated by the RFC," this finding is not supported by substantial evidence in the record (*see* Tr. 16, 428).

Finally, regarding the ALJ's reliance on the opinion of non-examining state agency physician Dr. Robert Hoskins, M.D., the Court finds persuasive plaintiff's argument as follows:

> [S]ince a medical opinion is required to establish that a claimant equals a listing section and there are no medical opinions which address this issue from a physician who has reviewed the complete record, an ALJ is required to further develop the record. [*citing*] SSR 96-6p; *Rogers v. Colvin*, No. 3:13-cv-5627 RSL, [2014 WL 2478518] (W.D. Wash. May 16, 2014) at p. [*3]. As the court in *Rogers*, supra, at *[3], noted:
>> The Court recognizes that the ALJ has broad discretion in determining whether to call a medical expert to testify. SSR 96-6p requires the ALJ to obtain an updated medical expert opinion if, 'in the opinion of the administrative law judge' additional medical evidence may change the state agency consultant's finding on equivalence. Here, where the state agency consultants had no finding on equivalence due to insufficient evidence, and the additional evidence was sufficient to establish the existence of mental impairments, it

is impossible to conclude that the additional medical evidence would not change the consultants' findings. The ALJ's failure to obtain updated medical expert opinion was in violation of SSR 96–6p.

The ALJ herein erred by failing to obtain an updated medical opinion about medical equivalency when non-examining Dr. Hoskins did not address medical equivalency [*citing*] (Tr. 80-94) and did not have the benefit of significant medical evidence after 2011 [], contrary to SSR 96-6p. [*citing*] *Rogers, supra*.

(ECF No. 15, pp. 2-3 (internal citation omitted)). Although the case cited is not directly on point and only is analogous, a similar principal applies here, as the state agency consultant rendered his opinion without the benefit of significant, probative evidence from plaintiff's treating neurologist, and a review of such evidence clearly may have changed the opinion of non-examining physician Dr. Hoskins. *See Rogers v. Colvin*, No. 3:13-cv-5627 RSL, 2014 WL 2478518 at *3 (W.D. Wash. May 16, 2014).

Based on a review of the record as a whole, the Court concludes that the ALJ erred in his review of the medical evidence, and erred when rejecting the opinions from Dr. Huddlestone.

(3) **Did the ALJ provide "clear and convincing" reasons to reject plaintiff's testimony**?

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, sections 1 and 2. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). The Court also notes that defendant's argument that clear and convincing reasons do not need to be

provided in order to reject a claimant's testimony is directly contrary to Ninth Circuit precedent, recently re-affirmed in July, 2014. *See Garrison v. Colvin*, 759 F.3d 995, 1015 n.18 (9th Cir. July 14, 2014) ("The government's suggestion that we should apply a lesser standard than 'clear and convincing' lacks any support in precedent and must be rejected"); *see also Smolen*, *supra*, at 1284 (if an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so") (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)). This Court will follow Ninth Circuit precedent. For the reasons stated, plaintiff's credibility should be assessed anew following remand of this matter.

      (4)    **Did the ALJ provide specific and valid reasons to reject lay witness evidence**?

Similarly, the lay evidence should be assessed anew following a reexamination of the medical evidence and of plaintiff's allegations, *see supra*, sections 1 and 2.

      (5)    **Did the ALJ consider all of the evidence when assessing the RFC and are the step 5 findings based on that RFC supported by law and fact**?

Because the medical evidence must be evaluated anew, the RFC and the step five findings must be determined anew, as necessary.

      (6)    **Should this matter be remanded for an award of benefits or for further administrative proceedings**?

Generally when the Social Security Administration does not determine a claimant's application properly, "the proper course, except in rare circumstances, is to

remand to the agency for additional investigation or explanation." *Benecke v.*

*Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth

Circuit has put forth a "test for determining when [improperly rejected] evidence

should be credited and an immediate award of benefits directed." *Harman v. Apfel*,

211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292

(9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra*, 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292.

Although plaintiff argues that it is clear that Listing 11.09A is met, even if the Court were

to agree, MS is a progressive impairment, and it is not entirely clear from the record

when plaintiff's limitations had progressed sufficiently to met or equal the Listed

impairment, *see supra*, section 1.

1

## CONCLUSION

2

3 The Court concludes as stated herein that the ALJ did not provide an adequate

analysis regarding whether or not plaintiff met or medically equaled Listing 11.09.

4

5 Following remand of this matter, the issue of whether or not plaintiff met or medically

equaled a Listed impairment must be assessed anew, possibly with the assistance of a

6

7 medical expert. In addition, the ALJ erred when evaluating the medical evidence from

treating neurologist, Dr. Huddlestone.

8

9 Based on these reasons and the relevant record, the Court **ORDERS** that this

matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

10

11 405(g) to the Acting Commissioner for further consideration.

12 **JUDGMENT** should be for plaintiff and the case should be closed.

13 Dated this 21st day of October, 2014.

14

15

16 J. Richard Creatura
United States Magistrate Judge

17

18

19

20

21

22

23

24